## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JED HORWITT, ESQ., AS RECEIVER FOR SENTINEL GROWTH FUND MANAGEMENT, LLC, RADAR ALTERNATIVE FUND LP, and RADAR ALTERNATIVE MASTER FUND SPC <br><br> Plaintiff, <br><br> v. <br><br> TARAN ASSET MANAGEMENT, LLC, CHRISTOPHER GLEASON, and BASELINE ADVISORS, LLC <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. <br> _____ |

## COMPLAINT

Plaintiff Jed Horwitt, Esq., in his capacity as Court-appointed receiver (the "Receiver") for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Radar Funds," and the Radar Funds together with Sentinel, collectively, the "Receivership Entities"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., as and for his complaint in the above-captioned action (the "Action") against defendants Taran Asset Management, LLC ("TAM"), Christopher Gleason a/k/a C. Christopher Gleason a/k/a Carroll Christopher Gleason ("Gleason") and Baseline Advisors, LLC ("BA" and together with TAM and Gleason, collectively, the "Defendants"), alleges as follows:

## SUMMARY OF CLAIMS:

1.      This lawsuit is part of the Receiver's continuing efforts to trace, recapture and return investor proceeds misappropriated from investment funds managed and operated as a

Ponzi scheme by Mark J. Varacchi ("Varacchi") and other individuals affiliated with the Receivership Entities. By this Action, the Receiver seeks to avoid that certain Confidential Settlement Agreement (the "Settlement Agreement") entered into by Varacchi, among others, for Varacchi's own personal benefit, and, in particular, to recover the $1,080,000 (the "Settlement Payment") paid by Sentinel to TAM pursuant to the Settlement Agreement. The settlement provided Varacchi with a release of TAM's and Gleason's claims of fraud and embezzlement based on conduct that he engaged in primarily (if not entirely) prior to the Ponzi scheme he orchestrated through the Receivership Entities. The settlement allowed Varacchi to avoid TAM's and Gleason's scrutiny of the "business" he then operated—later admitted by Varacchi, in both civil and criminal proceedings, to be a Ponzi scheme. The source of Sentinel's funds used by Varacchi to make this Settlement Payment had been the investments made by investors defrauded by Varacchi in furtherance of his Ponzi scheme.

2.      Thus, the Settlement Agreement and the Settlement Payment constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 *et seq*. ("CUFTA"). Accordingly, the Receiver, by this Action, may avoid these fraudulent transfers and recover their value for the benefit of the receivership estates and their creditors.

3.      Alternatively, the Receiver asserts a cause of action for unjust enrichment against the TAM and Gleason because they unjustly failed to pay the Receivership Entities for the benefits received for the Settlement Payment and Settlement Agreement, and equity and good conscience require the full restitution of the Settlement Payment paid by Sentinel to TAM so it may be distributed by the Receiver to the creditors of the receivership estates.

## THE PARTIES:

### The Receiver:

1.      The Receiver is a natural person residing and doing business in Connecticut.

2.      On May 1, 2017, the United States District Court for the District of Connecticut (Bolden, J.) entered its Order Appointing Receiver (the "Receivership Order") which, *inter alia*, appointed the Receiver to serve as receiver for the Receivership Entities.

3.      The Receivership Order entered in that certain civil action captioned *Securities and Exchange Commission v. Mark J. Varacchi, et al.* (Civil Action No.: 3:17-cv-00155-VAB) (the "SEC Action").

4.      The Receivership Order authorizes the Receiver, with prior court approval and in consultation with the United States Securities and Exchange Commission (the "SEC"), to, *inter alia,* "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Assets."  (Receivership Order ¶ 19.)

### The Receivership Entities:

5.      Sentinel is a limited liability company organized and existing under the laws of the State of Delaware.  Sentinel's last known business address was located in Stamford, Connecticut.

6.      Radar LP is a private fund organized and existing under the laws of the State of Delaware.

7.      Radar SPC is a private fund organized and existing under the laws of the Cayman Islands.

**The Defendants:**

8.     Defendant TAM is a limited liability company organized and existing under the laws of the State of Delaware.  Upon information and belief, TAM maintains a business address in Highland Park, Illinois, and formerly maintained a business address at 527 Madison Avenue, 14th Floor, New York, New York 10022.

9.     Defendant Gleason is a natural person residing in Highland Park, Illinois.  Upon information and belief, Gleason has been, at all relevant times, the sole member of TAM.  Gleason was a party to the Settlement Agreement sought by this Action to be avoided.

10.     Defendant BA is a limited liability company organized and existing under the laws of the State of Delaware.  BA was a party to the Settlement Agreement sought by this Action to be avoided.

## JURISDICTION AND VENUE:

**Jurisdiction and Venue in the SEC Action**

11.     On February 2, 2017, the SEC filed the SEC Action against the Receivership Entities and Varacchi in this District pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77t(d), 77v(a), Sections 21(d)(1), 21(e) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), 78aa, and Sections 209(d), 209(e) and 214 of the Investment Advisers Act of 1940 (the "Advisers Act") 15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14.

12.     Venue is proper for the SEC Action in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, and 28 U.S.C. § 1391(d), because, among other things, certain acts or transactions constituting the

violations of the federal securities laws by Varacchi and the Receivership Entities occurred in this District and because Sentinel maintained offices in Connecticut and Varacchi maintained a residence in Connecticut.

13.     Pursuant to the Receivership Order, in the SEC Action, on October 27, 2017, the Receiver requested leave to commence this Action, which this Court granted by its order entered on October 31, 2017.

**Jurisdiction and Venue in This Action**

14.     This Court has original jurisdiction over the SEC Action, to which the claims in this Action relate.  Further, this Action concerns property under the Court's exclusive jurisdiction and the Receiver has brought this Action in furtherance of his appointment and in the performance of his duties as directed by this Court.  Therefore, this Court has subject matter jurisdiction over this Action under 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §§ 754 and 1692, as well as under state law, because the Defendants have transacted business within the State of Connecticut, with Varacchi, Sentinel and others, and the Defendants have committed tortious acts within the State of Connecticut.

16.     Venue is proper in this District under 28 U.S.C. §§ 754 and 1391(b)(2), because a substantial part of the events giving rise to the Receiver's claim against the Defendants occurred within this District and because this Action is ancillary to the SEC Action.

## THE PONZI SCHEME:

17.     From its inception in approximately September, 2013, through its discovery in December, 2016, Varacchi operated a classic Ponzi scheme defrauding various individuals and

businesses into investing in certain "programs" maintained through the Radar Funds, and then using the fruits of such fraud to repay prior investors or to pay his own personal expenses and other personal liabilities—including the satisfaction of the claims asserted against him by TAM through the $1,080.000 Settlement Payment.

18.     Although Sentinel and Varacchi (who owned, managed and controlled Sentinel) were engaged in the business of providing investment advice concerning securities for compensation—and, therefore, "investment advisors" within the meaning of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1 *et seq.*—neither Sentinel nor Varacchi was registered as an investment advisor with the SEC.

19.     Notwithstanding, Varacchi, through Sentinel, solicited investments by offering a platform through which they could invest with "up-and-coming hedge fund managers" (the "Portfolio Managers").  Varacchi purported to offer "master" funds that included multiple series managed by the Portfolio Managers.

20.     The first private "master" fund was Radar LP with the first deposit into a brokerage account for Radar LP being made on September 25, 2013.  Varacchi later formed Radar SPC and the first deposit into a brokerage account for Radar SPC was made on December 9, 2015.

21.     The Portfolio Managers were offered sub-accounts within the Radar Funds which provided the appearance—to the Portfolio Managers and the Investors—that their investments had been segregated for their exclusive benefit.

22.     Varacchi and Sentinel offered two distinct "programs" through the Radar Funds. The first involved a long/short equity strategy and the other involved an initial public offering investment program.  Each of these were allocated across the Portfolio Managers.

6

23.     At all relevant times, the aggregate amount of the Receivership Entities' liabilities far exceeded the value of their unencumbered assets.

24.     While, to a limited extent, Varacchi and various Portfolio Managers used the Radar Funds to trade in securities, the revenues generated could not repay the aggregate amounts due investors or even significant withdrawals when requested by Investors.

25.     Instead, in order to perpetuate his Ponzi scheme, Varacchi used funds received from newly defrauded investors to repay prior investors.

26.     At various times when investors sought written confirmation of their accounts and investment performance, Varacchi transferred funds between sub-accounts within the Radar Funds in order to produce statements that falsely represented to investors that their particular sub-account possessed the proceeds of their investments.

27.     Varrachi also used available margin borrowing from the prime broker for the Radar Funds— to acquire positions in the sub-accounts.  By failing to disclose to investors that the securities had been purchased on margin, Varacchi falsely created the appearance that the investors' sub-accounts possessed their unencumbered assets.

28.     In total, Sentinel received $42.6 million in third party deposits between August, 2013, and December, 2016, and transferred $24.8 million to the Radar Funds. The Radar Funds received another $21.1 million directly from third parties.

29.     The Receiver has determined that approximately 25 investors who deposited funds with the Receivership Entities have unredeemed principal investments totaling approximately $20 million.

30.     The Receiver estimates that Varacchi used approximately $11 million of the Receivership Entities' funds to acquire assets for himself and to pay for his own personal expenses and other liabilities—including causing Sentinel to make the $1,080,000 Settlement Payment to TAM.

31.     On May 2, 2016, a particular investor deposited $5,000,000 into Sentinel's bank account, for the purpose of investment in Radar LP.  That day, Varacchi caused Sentinel to transfer $3,250,000 to the Radar LP brokerage account.  Varacchi then caused Sentinel to expend the remaining $1,750,000 for a variety of purposes, including transferring on May 20, 2016, $1.1 million to Varacchi's and Sentinel's counsel's fiduciary account to make the Settlement Payment. Before the investor's deposit of $5,000,000 into Sentinel's account, Sentinel lacked the funds necessary to make the Settlement Payment as the prior account balance was only $153,418.

32.     Varacchi also misappropriated the Receivership Entities' funds for his personal purposes as follows:

a.   Approximately $500,000 in cash withdrawals;

b.   Approximately $50,000 in debit card withdrawals

c.   Approximately $3.1 million in transfers to Varacchi's personal bank accounts;

d.   Approximately $33,000 in payments to Varacchi's family members;

e.   Approximately $3.7 million in private equity investments or loans on behalf of Varacchi;

f.   Approximately $425,000 in payments to business partners or associates of Varacchi;

g.   Approximately $640,000 in payments to persons or entities who made personal loans to Varacchi; and

h.   Approximately $50,000 to a foundation that is a 501(c)(3) nonprofit organization, for which Varacchi served as a board member.

8

33.    As a result of Varacchi's exploitation of the Receivership Entities to operate a Ponzi scheme, and his misappropriation and diversion of the Receivership Entities' funds and other assets, Varacchi has at all relevant times been liable the Receivership Entities, and the Receivership Entities constitute creditors of Varacchi.

34.    Furthermore, since Sentinel failed to transfer to Radar LP funds deposited with Sentinel for investment with Radar LP, and otherwise misappropriated and diverted funds in which Radar LP held an interest, and harmed Radar LP, at all relevant times, Radar LP was a creditor of Sentinel.

35.    Upon the entry of the Receivership Order in the SEC Action, the Receivership Entities were freed from Varacchi's domination and control, and the Receiver assumed control over the Receivership Entities in his place.

36.    Varacchi admitted to operating a Ponzi scheme through the Receivership Entities. Varacchi consented to the entry of Judgment in favor of the SEC in the SEC Action and, in the separate criminal proceeding pending before the Southern District of New York, pled guilty to criminal conduct relating to certain matters alleged in the Complaint commencing the SEC Action. (*See* SEC Action, Doc. No. 11-1, Consent to Entry of Judgment of Defendants Mark J. Varacchi and Sentinel Growth Fund Management, LLC and Relief Defendants Radar Alternative Fund LP and Radar Alternative Master Fund SPC.)  More specifically, in *United States v. Varacchi*, Crim. No. 1:17-cr-00076-NRB (S.D.N.Y.), Varacchi pleaded guilty to a criminal information charging him with counts of securities fraud, wire fraud, and conspiracy to commit securities and wire fraud. "The criminal information charged Defendant Varacchi with misappropriating, for the benefit of himself and others, funds that investors provided Sentinel for the purchase and sale of securities,

and then obtaining funds from other investors in order to make payments to investors whose funds he had misappropriated." (*Id*. ¶ 2.)

37.     Based, in part, upon Varacchi's consent to judgment, on May 1, 2017, the District Court in the SEC Action entered its Judgment as to Defendants Mark J. Varacchi and Sentinel Growth Fund Management, LLC and Relief Defendants Radar Alternative Fund LP and Radar Alternative Master Fund SPC.

## THE NORTHERN DISTRICT OF ILLINOIS ACTION:

38.     On April 5, 2016, Gleason caused TAM to sue, among other defendants, Varacchi in the U.S. District Court for the Northern District of Illinois.  The case was captioned *Taran Asset Management, LLC v. Mark Varacchi, et al.*, Civil Action No.: 1:16-cv-04011 (the "TAM Action").

39.     The Complaint filed in the TAM Action (the "TAM Complaint") alleged that TAM was an "asset management company" for a separate hedge fund, and that Varacchi served as TAM's chief operations officer.

40.     The TAM Complaint alleged that between February 2012 and June 2013, Varacchi and that certain entity, Concept Fund Services, LLC ("Concept"), through the individual, Jason Rhodes ("Rhodes"), embezzled over $430,000.00 from TAM by coordinating payments to "Sham Vendors" to pay invoices for services that were never provided to TAM.

41.     The TAM Complaint further alleged that through a series of "ATM transactions, payroll manipulations and accounting falsifications," Varacchi embezzled additional amounts totaling over $550,000.00 from TAM.

42.     Thus, the TAM Complaint asserted that in total, between February 2012 and December 2013, Varacchi and Concept, through Rhodes, embezzled over $980,000.000 from TAM.

43.     The TAM Complaint also alleged that on or around April 2013, TAM ceased its operations.

44.     TAM also named Sentinel and Radar LP as defendants in the TAM Action.

45.     TAM did not claim that Sentinel or Radar LP embezzled any funds from TAM.

46.     Rather, TAM made the general allegation that "[o]n information and belief, Varacchi and Rhodes used certain funds that they embezzled from TAM to create Sentinel."  No specific dates, amounts or methods of transfer were alleged.

47.     The TAM Complaint also did not make any other specific factual allegations against Sentinel or Radar LP.

48.     Notwithstanding, TAM made general conclusory allegations against Sentinel, Radar LP and/or BA (along with certain other defendants) as part of various counts asserting causes of action for (i) violation of Section 1030(a)(4) of the Computer Fraud and Abuse Act, (ii) violation of the Racketeer Influenced and Corrupt Organizations Act, (iii) aiding and abetting breach of fiduciary duty, (iv) unjust enrichment, and (v) civil conspiracy.

49.     TAM lacked a good faith basis to assert these causes of action against Sentinel, Radar LP and BA since, *inter alia*, Varacchi personally engaged in the conduct that harmed TAM, rather than on behalf of Sentinel, Radar and BA (each of which had not even been formed when most, if not all, of the wrongful conduct had occurred).  Upon information and belief, TAM

11

asserted these causes of action against Sentinel, Radar LP and BA to pressure Varacchi into settling promptly and on terms extremely favorable to TAM.

50.     After the commencement of the TAM Action, on or about April 25, 2016, TAM's and Gleason's attorney e-mailed Varacchi to solicit an "offer to resolve" the lawsuit and threatening that "[i]f the parties cannot reach an agreement in principle [within three days] we hereby reserve our right to forward the [TAM] Complaint, and its supporting documents, to the proper authorities."

51.     While TAM's attorneys had apparently referred to Varacci's fraudulent activities while with TAM, Varacchi immediately became concerned that TAM's prosecution of its claims in the TAM Action would result in the scrutiny of his current scheme through the Receivership Entities, and likely reveal their fraudulent nature.  This concern was significantly exacerbated by the threat from TAM's counsel that they would contact the "proper authorities" absent a quick settlement of the TAM Action.

52.     In order to perpetuate the Ponzi scheme and continue the fraud operated through the Receivership Entities, Varacchi settled the TAM Action within weeks thereafter using funds Sentinel had received from investors Varacchi had defrauded into investing as part of his Ponzi scheme.

**THE FRAUDULENT TRANSFER:**

53.     After receiving the e-mail from Gleason's and TAM's attorneys threatening to go to "proper authorities" in the absence of a settlement, Varacchi quickly negotiated and entered into, and caused, through his domination and control, Sentinel, Radar LP and BA to enter into, the Settlement Agreement with Gleason and TAM.

54. The Settlement Agreement provided that it was effective May 27, 2016.

55. The Settlement Agreement required Varacchi to pay TAM $1,080,000 within 14 days of its effective date.

56. The Settlement Agreement further provided that each of Varacchi, Sentinel, Radar LP and BA were jointly and severally liable to TAM and Gleason for Varacchi's payment obligations under the Settlement Agreement.

57. Revealing Varacchi's true purpose in promptly settling with Gleason and TAM, the Settlement Agreement included the following representation and warranty: "Gleason and Taran represent and warrant that, notwithstanding Taran's filing of the Complaint in this Lawsuit, as of the date of execution of this Agreement, neither of them has notified any government investigators, regulators or stock and security exchanges of the Complaint of this Lawsuit."

58. Gleason executed the Settlement Agreement on his own behalf and as the "managing member" of TAM.

59. Varacchi executed the Settlement Agreement personally and as the "managing member" of each of Sentinel, Radar LP and BA.

60. On May 20, 2016, Varacchi caused Sentinel to transfer $1.1 million to its counsel's fiduciary account, who then, at Varacchi's direction, on June 3, 2016, forwarded the $1,080,000 Settlement Payment to TAM.

61. Varacchi caused Sentinel and Radar LP to agree to the Settlement Agreement and caused Sentinel to transfer the Settlement Payment to TAM despite the fact that (i) Varacchi had personally engaged in the alleged wrongful conduct and was obligated to make the Settlement Payment, and (ii) Gleason and TAM held no valid claim against Sentinel or Radar LP.

13

62.     Varacchi entered into the Settlement Agreement, because he knew that defending the TAM Action would have ultimately revealed the Ponzi scheme he then operated through the Receivership Entities.

63.     Thus, while settling the TAM Action quickly, quietly and without discovery furthered Varacchi's interest in perpetuating the Ponzi scheme, neither Sentinel nor Radar LP received any meaningful value in consideration for relinquishing the $1,080,000 Settlement Payment or in consideration for binding themselves to the Settlement Agreement.

## FIRST COUNT: INTENTIONAL FRAUDULENT TRANSFER
## (CONN. GEN. STAT. § 52-552e(a)(1)) AS TO ALL DEFENDANTS

64.     The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

65.     The Settlement Agreement and the Settlement Payment constitute transfers of interests in property and the incurrence of obligations by Sentinel and Radar LP within the meaning of §§ 52-552(b)(12) of CUFTA, which were improperly caused by Varacchi through his domination and control over them in furtherance of his Ponzi scheme.

66.     The Settlement Agreement and Settlement Payment occurred during the course of the Ponzi scheme perpetrated by Varacchi, when Varacchi diverted and misappropriated Sentinel's and Radar LP's corporate assets and commingled investor money among the insolvent Sentinel and Radar LP entities.   The Settlement Payment in particular was made with money misappropriated and diverted from Sentinel and Radar LP by Varacchi.   Varacchi directed the Settlement Payment through Sentinel at a time when such entities were insolvent.   Accordingly, at all relevant times herein, Sentinel and Radar LP had a claim to the funds used to make the Settlement Payment.

14

67.     At all relevant times, Sentinel and Radar LP were "creditors" of Varacchi within the meaning of § 52-552(b)(4) of CUFTA, and Radar LP was a "creditor" of Sentinel.

68.      Each of the Settlement Agreement and Settlement Payment was made to or for the benefit of each of the Defendants.

69.     Varacchi sought to conceal the allegations made in the TAM Action as well as to conceal the Settlement Agreement and its terms including the payment of the Settlement Payment.

70.     Before the Settlement Agreement had been entered into and before the Settlement Payment had been made, TAM had commenced the TAM Action.

71.     Varacchi and, through Varacchi's domination and control, Sentinel absconded with the funds necessary to make the Settlement Payment.

72.     The value of the consideration received by Sentinel and Radar LP in exchange for the Settlement Agreement and the Settlement Payment was not reasonably equivalent to the value of the property transferred and the obligations incurred.

73.     Sentinel and Radar LP were insolvent at the time the Settlement Agreement was entered into and the Settlement Payment was made.

74.     The Settlement Agreement was entered into and the Settlement Payment was made by Varacchi and others to further and perpetuate the Ponzi scheme operated through the Receivership Entities, and were made with the actual intent to hinder, delay or defraud some or all of the Receivership Entities' then-existing creditors.

75.     The Settlement Agreement and Settlement Payment were (i) made on or within four years before the date of this Action or (ii) were discovered, and could only have been reasonably discovered, by the Receiver within one year before the date of this action.

15

76.     The Settlement Agreement and Settlement Payment constitute fraudulent transfers and fraudulently incurred obligations avoidable by the Receiver pursuant to § 52-552e(a)(1) of CUFTA and the Settlement Payment is recoverable from the transferee, TAM, pursuant to § 52-552h of CUFTA.

77.     As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(1), 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants: (i) avoiding the Settlement Agreement and the Settlement Payment; (ii) recovering the Settlement Payment, or the value thereof, from the transferee, TAM, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h.

### SECOND COUNT: CONSTRUCTIVE FRAUDULENT TRANSFER (CONN. GEN. STAT. § 52-552e(a)(2)) AS AGAINST ALL DEFENDANTS

78.     The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

79.     Sentinel and Radar LP did not receive reasonably equivalent value in exchange for entering into the Settlement Agreement or making the Settlement Payment.

80.     Varacchi caused Sentinel and Radar LP to enter into the Settlement Agreement and make the Settlement Payment at a time when Sentinel and Radar LP were engaged or were about to engage in a business or a transaction for which the remaining assets of Sentinel and Radar LP were unreasonably small in relation to the business or transaction, or Sentinel and Radar LP intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

16

81.     The Settlement Agreement and Settlement Payment constitute fraudulent transfers within the meaning of, and in violation of Conn. Gen. Stat. § 52-552e(a)(2).

82.     As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2), 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants (i) avoiding the Settlement Agreement and Settlement Payment; (ii) recovering the Settlement Payment, or the value thereof, from the transferee, TAM, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h.

## THIRD COUNT: CONSTRUCTIVE FRAUDULENT TRANSFER
## (CONN. GEN. STAT. § 52-552f) AS AGAINST ALL DEFENDANTS

83.     The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

84.     Varacchi caused Sentinel and Radar LP to enter into the Settlement Agreement and make the Settlement Payment at a time when they were insolvent, or Sentinel and Radar LP became insolvent as a result of the transfer and obligations incurred.

85.     The Settlement Agreement and Settlement Payment constitute fraudulent transfers within the meaning of, and in violation of Conn. Gen. Stat. § 52-552f.

86.     As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants (i) avoiding the Settlement Agreement and Settlement Payment; (ii) recovering the Settlement Payment, or the value thereof, from the transferee, TAM, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h

## FOURTH COUNT: UNJUST ENRICHMENT
## AS AGAINST ALL DEFENDANTS

87.     The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

88.     The Defendants benefited from the Settlement Agreement and the receipt of money from the Receivership Entities in the form of the Settlement Payment alleged herein which was the property of the Receivership Entities and their investors, and for which the Defendants did not adequately compensate the Receivership Entities or provide value.

89.     The Defendants unjustly failed to repay the Receivership Entities for the benefits received from the Settlement Agreement and Settlement Payment.

90.     The enrichment was at the expense of the Receivership Entities and, ultimately, at the expense of the Receivership Entities' creditors.

91.     Equity and good conscience require full restitution of the monies received by the Defendants from the Receivership Entities on account of the Settlement Agreement and the Settlement Payment for distribution to the creditors.

92.     As a result of the foregoing, the Receiver, on behalf of the Receivership Entities and its creditors, is entitled to an award in an amount to be determined at trial.

**WHEREFORE**, the plaintiff, Jed Horwitt, Esq., as receiver for Sentinel Growth Fund Management, LLC, Radar Alternative Fund LP and Radar Alternative Master Fund SPC, respectfully requests the Court enter judgment in favor of the Receiver and against Taran Asset Management, LLC and Christopher Gleason, as follows:

a.      Pursuant to §§ 52-552e(a)(1) and 52-552h, the avoidance of the Settlement Agreement and Settlement Payment;

b.      Pursuant to §§ 52-552e(a)(2) and 52-552h, the avoidance of the Settlement Agreement and the Settlement Payment;

c.      Pursuant to §§ 52-552f and 52-552h, the avoidance of the Settlement Agreement and the Settlement Payment;

d.      Pursuant to § 52-552i(b), the recovery of the Settlement Payment or the value thereof from TAM as the first transferee of such transfer, and each of the Defendants to the extent they were the person for whose benefit the transfer was made;

e.      An attachment or other provisional remedy against the assets transferred or other property of the transferees;

f.      A temporary restraining order and preliminary and permanent injunctions against further disposition by TAM and any subsequent transferees of the assets transferred or of other property;

g.      The appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

h.      Reasonable attorneys' fees;

i.      All applicable pre-judgment and post-judgment interest;

j.      Costs; and

k.      Such other and further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut, this 2nd day of November, 2017.

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER


By:/s/ Stephen M. Kindseth
Stephen M. Kindseth (ct14640)
Patrick R. Linsey (ct29437)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 245
Facsimile: 203-549-0903
Email: skindseth@zeislaw.com
        plinsey@zeislaw.com
His Attorneys